## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARIS RAMIREZ-ALVAREZ,** | : | **CIVIL NO. 1:11-CV-2098** |
| | : | |
| **Petitioner,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ERIC HOLDER, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This case involves a habeas corpus petition filed by an immigration detainee, Aris Ramirez-Alvarez (Ramirez). In his petition, Ramirez invites us to re-visit issues long foreclosed, and review decisions long since passed in the course of the petitioner's decades long immigration history. For the reasons set forth below, it is recommended that we decline this invitation.

### A.   Ramirez's Criminal History and Prior Immigration Background

The petitioner, Aris Ramirez-Alvarez, is a native and citizen of El Salvador who, by his own admission, twice entered the United States illegally after being removed in 2003 and in 2005. (Doc. 1 at pp. 5-7) The legal journey that now brings Ramirez before this Court began in 1995 when Ramirez was convicted in state court in California of simple possession of a controlled substance and was sentenced to 270

days imprisonment. (Id., p. 4.) Four years later, in 1999, Ramirez was convicted again in state court in California of robbery and possession of ammunition and was sentenced to four years in prison. (Id., p. 5.)

Ramirez alleges that while on bail on these state robbery charges he "had to momentarily leave the country to attend his cousin's funeral" in El Salvador. (Id., p. 5.) Ramirez does not explain whether this foreign travel was authorized in any fashion by the state courts. By Ramirez's account, this bereavement trip to his homeland then took a bizarre and sinister turn when he was "falsely accused . . . for homicide" while in El Salvador. (Id.) Ramirez alleges that he was detained by Salvadoran authorities on this murder charge until October 2000, when he was released, and returned to California. (Id.) In California, Ramirez's legal odyssey then continued with his May 2001 conviction and sentence in state court on robbery charges. (Id.) Upon completion of his sentence in August of 2003, Ramirez was removed from the United States to El Salvador. (Id.)

Ramirez and the Respondents provide contrasting perspectives on this initial removal proceeding. Ramirez characterizes the removal as a legal misunderstanding on his part caused by incompetent counsel. In contrast, from the respondents' perspective, on July 14, 2000, Ramirez failed to appear for this immigration hearing, thus forfeiting his right to contest removal and an immigration judge ordered that Ramirez be removed from the United States. (Doc. 7, Ex. 1, Decision). Accordingly,

on September 22, 2000, Ramirez was directed to report to a United States Immigration

Officer for departure to El Salvador on October 18, 2000. (Id.,  Ex. 2 Form I-166).

Ramirez failed to appear as ordered for removal, apparently because he "had to

momentarily leave" the United States and return to El Salvador for a funeral in 2000,

a funeral that led to Ramirez's arrest in El Salvador on homicide charges.  Therefore,

an immigration warrant for his removal was issued. (Doc. 7, Ex 3 Form I-205, Warrant

for Removal/Deportation).   After Ramirez completed service of his state robbery

sentence this immigration warrant was executed and Ramirez was deported on August

20, 2003. (Doc. 7, Ex. 4 Notice of Intent/Decision to Reinstate Prior Order).

Ramirez's petition then provides a confused and confusing account of his life

in El Salvador following his removal to that country in 2003.  According to Ramirez,

upon his return to his homeland he "was perceived as a deported ex-gang member . .

. and told to leave the country or be killed." (Id., p. 6.)  Ramirez further alleges that the

Salvadoran government was unable or unwilling to protect him from "an honor killing"

at the hands of others. (Id.)  Other than Ramirez's prior, enigmatic referral to his 2000

arrest in El Salvador for a homicide in that country, the petitioner provides no other

explanation for why he was now the target of "an honor killing".

In any event, Ramirez reports that he resolved that he "had to leave El

Salvador." (Id.)  Accordingly, on December 6, 2004, Ramirez began the next step in

his legal odyssey when he entered this country without authorization, was arrested in

Texas and charged with illegal reentry. (<u>Id</u>., p. 6.)   This episode, in turn, led to Ramirez's second removal from the United States on November 7, 2005. (<u>Id</u>., p.7.)

Once again the parties' accounts of these 2005 removal proceedings are marked by profound differences in the recollection of past, historic events.  According to the respondents, on April 6, 2005, immigration officials issued a Notice of Intent/Decision to Reinstate Prior Removal Order. (Doc. 7)  This Notice identified Ramirez as an alien who had been previously removed and informed Ramirez that immigration officials intended to reinstate the order of removal entered on July 14, 2000. (<u>Id</u>.)  The notice charged that Ramirez was subject to removal, pursuant  8 U.S.C. § 1231(a)(5), "as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order." (<u>Id</u>.)

On May 23, 2005, it was determined that Ramirez was subject to removal through reinstatement of the prior removal order, and on June 1, 2005, a warrant for Ramirez's removal was issued. (Doc. 7, Ex. 5 Warrant for Removal/Deportation). Ramirez was also issued a written warning indicating:

> In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act) you are prohibited from entering, attempting to enter, or being in the United States: ... At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony.

4

(Doc. 7 Ex. 7 Warning to Alien Ordered Removed or Deported).

Ramirez then sought to avoid removal by seeking asylum and the matter was referred to a immigration judge for a determination after the asylum officer concluded Ramirez had a reasonable fear of persecution or torture. (Doc. 7,  Ex. 6 Notice of Referral to Immigration Judge) See also  (Doc. 1 at 19-21, Declaration of Sworn Statement/Reasonable Fear Questions and Answers).  On October 3, 2005, Ramirez's requests for: (1) withholding of removal; (2) withholding of removal under the United Nations Convention Against Torture ("CAT"); and, (3) deferral of removal under the CAT, were denied and he waived his right to an appeal. (Id., p. 23 Order of the Immigration Judge).  Ramirez was then removed from the United States on November 7, 2005. (Doc. 7, Ex. 5 Warrant for Removal/Deportation; Ex.8, Record of Deportable/ Inadmissible Alien at 1; Ex. 9,Withdrawal of Application for Admission /Consular Notification).

Ramirez describes these 2005 removal proceedings in different terms, claiming that he had what was recognized as a meritorious asylum request and application for relief under the Convention Against Torture. (Doc. 1, p. 6-7)  However, Ramirez alleges that the litigation of this meritorious claim would have entailed some indefinite period of immigration detention. (Id.)  After "consulting with his fiancee," Ramirez asserts that, motivated by "Petitioner's love for his fiancee," he waived his rights and consented to return to El Salvador. (Id.)  Once he returned to El Salvador in December

5

2005, Ramirez describes a two year immigrant's journey through Costa Rica, Honduras, and Mexico, travels that ended on January 3, 2007, when Ramirez was arrested,  charged with illegal reentry and subsequently convicted of this federal offense in the United States District Court for the Southern District of Texas. (Doc. 1, p.7)

Ramirez was sentenced to 63 months incarceration as a result of this immigration offense conviction. (Id.)  As Ramirez's federal sentence drew to a close, immigration officials began removal proceedings against him.  As part of those proceedings, on September 28, 2011, Ramirez was interviewed by immigration officials and was recommended for expedited removal. (Doc.7, Ex.12 Record of Deportable or Inadmissible Alien).  An Order of Removal pursuant to 8 U.S.C. § 1225(b)(1), then was issued and served upon Ramirez on October 3, 2011.(Doc. 7, Ex. 13 Notice and Order of Expedited Removal).  Ramirez has been in the custody of ICE officials since September 30, 2011. (Doc. 1, p.8)

### B.    Ramirez's Habeas Petition

Six weeks after Ramirez was taken into immigration custody on these reinstated removal orders, on November 9, 2011, Ramirez filed the instant habeas corpus petition. (Doc. 1)  Ramirez's petition assails his current detention pending removal, but also invites this Court to engage in a wholesale retrospective re-evaluation of past immigration proceedings spanning many years.  Thus, Ramirez urges us to re-consider

6

and re-evaluate both the October 3, 2005, denial of his CAT application and his November 7, 2005, removal from the United States claiming them to be a direct violation of his constitutional rights. (Id., pp. 1, 6-7, 9.)  Ramirez further urges us to review and reassess the July 14, 2000, removal order entered against him. In this regard, Ramirez seems to challenge that 2000 removal proceeding on the grounds that it was conducted *in absentia* because he "had to momentarily leave" the United States and return to El Salvador for a funeral in 2000, a funeral that led to Ramirez's arrest in El Salvador on homicide charges.

The relief Ramirez seeks in the petition is as sweeping as the factual narrative contained in his petition:  Ramirez invites us to declare his priors order of removal invalid, and grant deferral of removal under the CAT, (Id., p. 12) since Ramirez believes he is a United States citizen in his heart and is "due relief because he was never warned of the collateral consequences of deportation" when he pled guilty to a narcotics possession charge and when he failed to appeal his robbery conviction. (Id., p. 11.)  The Government has filed a response to this petition, (Doc. 7), and Ramirez has submitted a traverse in support of his petition. (Doc. 8)  Therefore, this matter is now ripe for resolution.

To the extent that Ramirez invites us in this petition to review the merits of immigration decisions spanning the past eleven years, we should decline this invitation since this Court plainly lacks the authority to sit as an appellate tribunal ruling upon

immigration judge decisions spanning from 2000 through 2005.  Further, to the extent that Ramirez wishes to challenges his current, two-month period of detention pending removal from the United States, we believe the periods of detention experienced by Ramirez are expressly required by statute.  Therefore, we recommend that the Court deny Ramirez's petition at this time without prejudice to renewal of this detention claim at an appropriate future time.

## II.   Discussion

### A.   Ramirez May Not Indulge in a Belated Substantive Review of the Merits of His 2000 and 2005 Removal Proceedings in this Habeas Petition

At the outset, in his petition Ramirez invites us to engage in a wide-ranging retrospective reassessment of the rulings, and choices, made by both the petitioner and other participants in his 2000 and 2005 removal hearings.  This we cannot do.

In this regard, Ramirez's petition and his invitation to relitigate these issues ignores the explicit limitations on federal habeas corpus jurisdiction set by Congress. Aris Ramirez-Alvarez comes before us a convicted criminal alien, who illegally re-entered the United States and is the subject of two prior outstanding and longstanding removal orders.  For such persons, the 8 U.S.C. §1231(a)(5) provides that:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, *the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed,* the alien is not eligible and may not apply for any relief under this chapter, and the

alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5)(emphasis added).

Thus, as an alien subject to prior removal orders who has been convicted of illegal re-entry into the United States, Ramirez's past removal orders, by statute, are "not subject to being reopened or reviewed."  This statutory prohibition on review of removal orders relating to this narrow class of criminal aliens convicted of illegal re-entry has been expressly upheld by the courts, <u>Fernandez-Vargas v. Gonzales</u>, 548 U.S. 30 (2006), and bars consideration of Ramirez's efforts to relitigate the prior removal orders entered in his case.

Furthermore, to the extent that Ramirez invites us to reassess his entitlement to relief under the Convention Against Torture, this request runs afoul of another statutory bar.  Habeas corpus review of such claims is now expressly forbidden by 8 U.S.C. §1252(a)(5), which provides in clear and precise terms that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, . . . . For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such

title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5). Therefore, Convention Against Torture claims like those belated proffered here by Ramirez simply may no longer be considered by district courts pursuant to writs of habeas corpus. <u>Kamara v. Attorney General of the United States</u>, 420 F.3d 202 (3d Cir. 2005). Instead, Ramirez's sole avenue of relief lies with the court of appeals in accordance with 8 U.S.C. §1252.

In sum, to the extent that Ramirez urges us to substantively review these prior removal orders, or undertake a reassessment of his claims under the Convention Against Torture, these requests fall beyond this Court's jurisdiction, and may well fall beyond any court's jurisdiction since by statute: "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed". 8 U.S.C. §1231(a)(5). Therefore, this aspect of Ramirez's petition must be denied.

### B.    <u>Ramirez's Post-Removal Detention Does Not Yet Raise Constitutional Concerns</u>

Finally, we turn to one issue raised by this petition which remains within our jurisdiction; namely, the question of whether Ramirez has been subject to excessive detention pending removal.  In this case, Ramirez's previously entered final orders of

removal were reinstated in September of 2011.  Thus, Ramirez came into immigration custody less than three months ago.

As an alien under an administratively final order of removal, Ramirez's detention is now governed by a specific set of statutory and constitutional rules.

First, by statute, aliens like Ramirez, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A).  The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2).  Furthermore, for aliens awaiting removal, like Ramirez, the contours of their constitutional right to release pending removal is now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001).  In Zadvydas,  the United States Supreme Court extended due process protections to aliens awaiting  removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by  8 U.S.C. § 1231(a)(1)(A).  Beyond this initial 90-day period the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable  period of detention." Id. at 701.

The Court then observed that:

While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders should either be removed, or be given bail consideration.

Further, cases construing Zadvydas recognize that the presumptively reasonable six-month detention period described by the Supreme Court is just that–a

12

presumptively reasonable period of detention.  It is not an ironclad time frame within which aliens must be removed, or released.  Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months,' id. at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure release pending removal.  In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006); Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005).  In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held

in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.  Applying these standards, periods of detention far greater than the six months have repeatedly been sustained where the alien has failed to show there is no significant likelihood of removal in the reasonably foreseeable future.  See, e.g., Joseph v. United States, 127 F. App'x 79 (3d Cir. 2005) (11 months); Sun v. Holder, No. 10-2186, 2010 WL 5391279 (M.D. Pa. Dec. 22, 2010)(10 months);  Joseph  v. Lowe, No. 10-1222, 2010 WL 3835872 (M.D. Pa. Sept. 24, 2010) (10 months); Boyce v. Holder, 09-2254, 2010 WL 817482 (M.D. Pa. March 9, 2010)(18 months).

Judged against these standards, we find that Ramirez cannot make out a post-removal detention claim that warrants habeas relief at this time.  Indeed, at present, Ramirez has been detained for less than the  90-day mandatory detention period set by statute.  8 U.S.C. § 1231(a)(2).  On these facts, we find that Ramirez simply has not made a valid claim that he has been subjected to an unconstitutionally excessive period of post-removal delay.    Therefore, this detention does not raise concerns of constitutional dimension warranting habeas relief at this time.  See Hendricks v. Reno, 221 F. App'x 131 (3d Cir. 2007)(affirming denial of habeas petition where court found delay from date of administratively final deportation order was less than 3 months).

While we find that Ramirez has not carried his burden of proof under <u>Zadvydas</u>, justifying habeas corpus relief at this time, we remain mindful of the Supreme Court's admonition that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink". <u>Zadvydas</u>, 533 U.S. at 701.  In this regard, this Court's prior observation is particularly apt:

> Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Zadvydas</u>, 533 U.S. at 701, 121 S.Ct. at 2505.  Thus, if time passes with no progress on removal, [the petitioner] may file a new 2241 petition challenging his continued detention.

<u>Aishrat v. Mukasey</u>, No. 08-786, 2008 WL 3071003, *2 (M.D.Pa. Aug.1, 2008).

In sum, at present, Ramirez has not carried his burden of proving that his continued post-removal detention has become unreasonable in its duration.  Therefore, the petition should be denied without prejudice to Ramirez renewing this petition, on claims relating to the duration of his detention only, if that immigration detention becomes sufficiently prolonged to justify habeas relief.

III.   **Recommendation**

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus,  IT IS RECOMMENDED that the Petition be DENIED without prejudice to renewal at such time, if any, as the delay and detention become unreasonable and excessive .

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of December 2011.

*__S/Martin C. Carlson__*
Martin C. Carlson
United States Magistrate Judge